FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 28, 2020

SEAN F. MCAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WILLIAM N.,[1] <br><br>                 Plaintiff, <br><br>    vs. <br><br> ANDREW M. SAUL, <br> COMMISSIONER OF SOCIAL <br> SECURITY, <br>                Defendant. | No. 1:19-cv-03215-MKD <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT <br><br> ECF Nos. 14, 15 |

Before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 14, 15.  The parties consented to proceed before a magistrate judge.  ECF No. 7.  The Court, having reviewed the administrative record and the parties' briefing,

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.  *See* LCivR 5.2(c).

ORDER - 1

is fully informed.  For the reasons discussed below, the Court grants Plaintiff's

motion, ECF No. 14, and denies Defendant's motion, ECF No. 15.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

ORDER - 3

416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

ORDER - 4

1  the claimant's "residual functional capacity." Residual functional capacity (RFC),

2  defined generally as the claimant's ability to perform physical and mental work

3  activities on a sustained basis despite his or her limitations, 20 C.F.R. §

4  416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

5       At step four, the Commissioner considers whether, in view of the claimant's

6  RFC, the claimant is capable of performing work that he or she has performed in

7  the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is

8  capable of performing past relevant work, the Commissioner must find that the

9  claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of

10 performing such work, the analysis proceeds to step five.

11      At step five, the Commissioner considers whether, in view of the claimant's

12 RFC, the claimant is capable of performing other work in the national economy.

13 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner

14 must also consider vocational factors such as the claimant's age, education and

15 past work experience. *Id.* If the claimant is capable of adjusting to other work, the

16 Commissioner must find that the claimant is not disabled. 20 C.F.R. §

17 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis

18 concludes with a finding that the claimant is disabled and is therefore entitled to

19 benefits. *Id.*

20

ORDER - 5

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On November 26, 2014, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of May 1, 2014. Tr. 257, 436-41. The application was denied initially, and on reconsideration. Tr. 279-85; Tr. 291-300. Plaintiff appeared before an administrative law judge (ALJ) on June 15, 2017, with supplemental hearings to obtain expert testimony on April 5, 2018 and August 6, 2018. Tr. 162-256. On August 31, 2018, the ALJ denied Plaintiff's claim. Tr. 43-63.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since November 26, 2014. Tr. 48. At step two, the ALJ found that Plaintiff has the following severe impairments: thoracic aortic aneurysm and obesity. Tr. 49.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed

ORDER - 6

impairment.  Tr. 50.  The ALJ then concluded that Plaintiff has the RFC to perform

light work with the following limitations:

> [Plaintiff] is able to lift/carry 20 pounds occasionally and 10 pounds
> frequently.  He can stand and/or walk (with normal breaks) for 6
> hours in an eight-hour workday, and sit (with normal breaks) 6 hours
> in an eight-hour workday.  He can frequently reach in front bilaterally.
> He can occasionally climb ramps and stairs, balance, stoop, kneel,
> crouch, and crawl.  He can never climb ladders, ropes, or scaffolds.
> He must avoid concentrated exposure to workplace hazards, such as
> machinery and unprotected heights.

Tr. 50-51.

At step four, the ALJ found Plaintiff is able to perform his past relevant

work as a security guard and software engineer.  Tr. 55.  Therefore, the ALJ

concluded Plaintiff was not under a disability, as defined in the Social Security

Act, from the date of the application though the date of the decision.  Tr. 56.

On July 22, 2019, the Appeals Council denied review of the ALJ's decision,

Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes

of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

### ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

him supplemental security income benefits under Title XVI of the Social Security

Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ conducted a proper step-four analysis;

2.  Whether the ALJ properly evaluated the medical opinion evidence;

ORDER - 7

3.  Whether the ALJ conducted a proper step-three analysis; and

4.  Whether the ALJ properly evaluated Plaintiff's symptom claims.

ECF No. 14 at 2.

## DISCUSSION

### A. Step-Four Analysis

Plaintiff contends the ALJ erred in the step four analysis by finding Plaintiff capable of performing his past work as a security guard and software engineer. ECF No. 14 at 7-11.  At step four of the sequential evaluation, the ALJ must determine whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 416.920(f).  To make this determination, the ALJ must make the following specific findings of fact: (1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job/occupation; and (3) a finding of fact that the individual's RFC would permit a return to his or her past job or occupation.  S.S.R. 82-62 at *4 (January 1, 1982). Work is usually relevant when it was performed within the 15 years prior to the time of adjudication, although work performed prior to the 15-year period may be relevant when there is a continuity of skills, knowledge, and processes between the older work and the claimant's more recent work.  SSR 82-62.  A claimant has the ability to return to his previous work if he can perform the "'actual functional demands and job duties of a particular past relevant job'" or "'[t]he functional

ORDER - 8

demands and job duties of the [past] occupation as generally required by employers throughout the national economy.'" *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (quoting SSR 82-61).

At step four, the ALJ found Plaintiff could perform his past work as a security guard and software engineer, both as actually and generally performed. Tr. 55-56.  Defendant concedes the ALJ erred in finding Plaintiff could perform his past work as a software engineer, as the work was performed more than 15 years prior to the date of adjudication, and Plaintiff did not maintain the skills necessary for the position.  ECF No. 15 at 17-18.  However, Defendant argues the error was harmless because the ALJ properly found Plaintiff capable of performing his past relevant work as a security guard.  *Id.* at 18-19.

The ALJ found Plaintiff is capable of performing light work with additional limitations, including he must "avoid concentrated exposure to workplace hazards, such as machinery and unprotected heights."  Tr. 50-51.  The ALJ noted the vocational expert testified that the security guard position did not exceed Plaintiff's RFC and found the expert's testimony was consistent with the Dictionary of Occupational Titles (DOT).  Tr. 56.  The ALJ reasoned that although Plaintiff alleges dizziness, it is not attributable to a medically determinable impairment, and thus the RFC does not have limitations due to dizziness, and noted that while Plaintiff is limited in his ability to use dangerous moving machinery, many security

guard positions do not require driving, and though those positions may require a gun, guns are not moving machinery. *Id.* Thus, the ALJ found Plaintiff's RFC does not preclude work as a security guard. *Id.*

At the 2018 hearing, the vocation expert first classified Plaintiff's past work as a sedentary security officer, with an SVP of seven, DOT code 189.167-034. Tr. 244. She initially testified that Plaintiff could still perform his past relevant work as a security officer, even if he was precluded from driving and needed to avoid concentrated exposure to workplace hazards, such as machinery and unprotected heights, and she stated her testimony was consistent with the Selected Characteristics of Occupations (SCO) and DOT. Tr. 245-46.

However, when Plaintiff's counsel directed the vocational expert to Plaintiff's work history report, in which he reported he lifted up to 50 pounds, walked four hours and stood four hours, the expert stated there is a light security guard position, with a skill level of three. Tr. 246, 473. She testified Plaintiff's past work is more consistent with the light security guard job, DOT 372.667-034, than the sedentary security officer job. Tr. 246, 253. The vocational expert testified she would rule out the security guard position, based on her experience, not the DOT, because guards and officers often drive vehicles and carry firearms. Tr. 246. She then agreed there are guard positions that do not require driving, but in the positions that do not require driving, "a number of" them require firearms,

ORDER - 10

and there are only "selective job placements" that rule out both carrying firearms and driving.  Tr. 249-50.  The vocational expert further testified that she did not have estimates for the number of positions that do not require driving.  *Id.*

While the ALJ found Plaintiff could perform his past work as a security guard, both as actually and generally performed, this is inconsistent with Plaintiff's reported work history.  Plaintiff reported his work required standing/walking up to eight hours per day and lifting up to 50 pounds.  Tr. 473.  As such, the ALJ erred in finding that Plaintiff could perform the work as actually performed because such finding is inconsistent with Plaintiff's light RFC, in which he was limited to standing/walking up to six hours per day and lifting up to 20 pounds.  Tr. 50-51.

The ALJ also erred in finding that Plaintiff could perform his past work as a security guard as generally performed, because the record is ambiguous as to whether Plaintiff's RFC is consistent with the security guard position.  The vocational expert first classified Plaintiff's work as a sedentary security officer and testified Plaintiff could perform the officer position, which she stated was consistent with the DOT and SCO.  Tr. 245-46.  Though the expert testified many positions require driving and a firearm, which she believed was inconsistent with Plaintiff's RFC, the ALJ clarified that there are officer positions that do not require driving.  Tr. 249-50.

1      However, the ALJ found Plaintiff is capable of performing his past work as

2   a security guard, not a security officer.  Tr. 55.  The ALJ stated the vocational

3   expert opined Plaintiff can perform his past work as a security guard.  Tr. 56.  The

4   vocational expert re-classified Plaintiff's work as a security guard, but she never

5   testified that Plaintiff could perform his work as a security guard, given his RFC.

6   Once the expert re-classified the job, the ALJ asked if Plaintiff would have

7   transferrable skills from the security guard position but did not ask if Plaintiff

8   could perform the new job classification of security guard, rather than security

9   officer.  Tr. 254-55.

10     Further, the vocational expert testified Plaintiff's RFC precluded the security

11  guard position, because the position often requires driving or using a gun.  The

12  ALJ reasoned Plaintiff is able to perform the security guard position because some

13  positions do not require driving, and a gun is not dangerous moving machinery.

14  Tr. 56.  However, the ALJ's RFC does not limit Plaintiff only to avoiding

15  concentrated exposure to dangerous moving machinery, rather, the RFC limits

16  Plaintiff to avoiding concentrated exposure to "workplace hazards, such as

17  machinery and unprotected heights."  Tr. 51.  At the hearing, the ALJ asked if

18  Plaintiff could perform his past work if he was limited to light work with

19  additional limitations including avoiding "concentrated exposure to hazards and to

20

ORDER - 12

heights such as dangerous moving machinery and he should have no exposure to driving." Tr. 245.

Although the expert initially testified Plaintiff could perform the security officer position based on the hypothetical, Tr. 246, she then clarified the job was a guard, not an officer, and further stated the security guard position would be ruled out due to guards and officers needing to drive vehicles and carry firearms, Tr. 247. She did not testify which specific limitation in the RFC related to her testimony; though the ALJ interprets her testimony as meaning the job would be precluded because of the "dangerous moving machinery" limitation, this is clearly inconsistent with the ALJ's own determination, as the ALJ then stated the job can be performed because guns are not moving machinery. Tr. 56. The RFC gives dangerous moving machinery as just one example of a workplace hazard, and it appears the expert interpreted the RFC as precluding the ability to have concentrated exposure to guns. *See* Tr. 51, 247. As such, the expert testified Plaintiff's past work as a security guard exceeded his RFC and the ALJ erred in finding otherwise.

Defendant argues the ALJ did not err because an expert at a prior hearing testified security jobs are generally unarmed, the current vocational expert's testimony was inconsistent with the DOT, and the ALJ reasonably relied on the DOT in finding Plaintiff could perform his past work. ECF No. 15 at 18.

ORDER - 13

However, the Court cannot rely on this post hoc rationalization, because the ALJ did not rely on any of these reasons in making the determination.  *See Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1225 (9th Cir. 2009).  Further, the ALJ stated the expert's testimony was consistent with the DOT.  Tr. 56.  Given the inconsistencies in the record regarding whether Plaintiff is able to perform his part work as a security guard as generally performed, and the lack of an explanation for the inconsistencies, the ALJ erred at step four of her analysis.  On remand, the ALJ is directed to take new vocational expert testimony regarding Plaintiff's past relevant work and his ability to perform this past work or other work.

**B. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in her consideration of the opinions of Maryalice Hardison, ARNP, Rox Burkett, M.D., Joan Harding, M.D., and Myrna Palasi, M.D.  ECF No. 14 at 11-18.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a

reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray,* 554 F.3d at 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir.

ORDER - 15

2014) (alteration in original); *see* 20 C.F.R. § 416.913 (2013).[2]  However, an ALJ

is required to consider evidence from non-acceptable medical sources, such as

therapists.  20 C.F.R. § 416.913(d) (2013).[3]  An ALJ may reject the opinion of a

non-acceptable medical source by giving reasons germane to the opinion.  *Ghanim*,

763 F.3d at 1161.

### 1.  *Dr. Harding*

Dr. Harding completed a DSHS questionnaire in which she opined Plaintiff

should not work at heights, with heavy equipment, or drive; his conditions range

from causing no interference to causing a marked limitation in his ability to lift,

carry, push, pull, communicate, and sit; he is limited to performing sedentary

work; and his limitations are expected to last 12 months.  Tr. 1077-78.  The ALJ

gave Dr. Harding's opinion little weight.  Tr. 55.  As Dr. Harding's opinion is

---

[2] The regulation that defines acceptable medical sources is found at 20 C.F.R. §

416.902 for claims filed after March 27, 2017.  The Court applies the regulation in

effect at the time Plaintiff's claim was filed.

[3] The regulation that requires an ALJ's consider opinions from non-acceptable

medical sources is found at 20 C.F.R. § 416.927(f) for claims filed after March 27,

2017.  The Court applies the regulation in effect at the time Plaintiff's claim was

filed.

ORDER - 16

contradicted by Dr. Hale's opinion, Tr. 275-76, the ALJ was required to give specific and legitimate reasons to reject Dr. Harding's opinion. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Harding's opinion was entitled to less weight because she did not examine Plaintiff. Tr. 55. Sources who have examined the claimant are generally entitled to more weight than sources who have not examined the claimant. 20 C.F.R. § 416.927(c)(1); *Holohan,* 246 F.3d at 1202. However, the ALJ erroneously found Dr. Harding did not examine Plaintiff. Dr. Harding completed a questionnaire in which she wrote that she examined Plaintiff on July 6, 2016, and she attached examination results. Tr. 1031-39, 1078-80. The ALJ erred in finding Dr. Harding's opinion was entitled to less weight because she did not examine Plaintiff.

Second, the ALJ found Dr. Harding's opinion indicated Plaintiff's symptoms were temporary. Tr. 55. Temporary limitations are not enough to meet the durational requirement for a finding of disability. 20 C.F.R. § 416.905(a) (requiring a claimant's impairment to be expected to last for a continuous period of not less than twelve months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle*, 533 F.3d at 1165 (affirming the ALJ's finding that treating physicians' short-term excuse from work was not indicative of "claimant's long-term functioning"). Dr. Harding opined Plaintiff's limitations were expected to last 12 months, which

ORDER - 17

meets the duration requirement.  Tr. 1078.  The ALJ erred in finding Dr. Harding's opinion was entitled to less weight because it was temporary.

While the ALJ offered additional reasons to reject Dr. Harding's opinion, the Court finds the ALJ's error in the analysis of Dr. Harding's opinion is not harmless.  Moreover, as the case is being remanded due to the step four error, the ALJ is also directed to reconsider Dr. Harding's opinion and incorporate the limitations into the RFC or give specific and legitimate reasons, supported by substantial evidence, to reject the opinion.

### 2.  Ms. Hardison

Ms. Hardison, a treating nurse practitioner, provided two opinions regarding Plaintiff's functioning.  Tr. 1185-87, 1228-30.  In June 2017, Ms. Hardison diagnosed Plaintiff with dizziness, hypertension, thoracic aortic aneurysm, hyperlipidemia, MRH, and insomnia, and opined that beginning in May 2014, Plaintiff had multiple limitations including a need to lie down at least twice a day for up to one hour each time; sudden spikes in blood pressure or any physical trauma could ca use his thoracic aneurysm to burst; his medications cause side effects including worsening of dizziness and tiredness; Plaintiff would miss four or more days of work per month due to frequent dizziness; and Plaintiff is unable to meet the demands of full-time sedentary work.  Tr. 1185-87.  In January 2018, Ms. Hardison diagnosed Plaintiff with thoracic aortic aneurysm and hypertension, and

ORDER - 18

1  opined that since February 2015, Plaintiff needed to lie down at least once a day

2  for 30 minutes to one hour; he would miss four or more days of work per month;

3  and he is unable to meet the demands of sedentary work. Tr. 1228-30. The ALJ

4  gave Ms. Hardison's opinions little weight. Tr. 54. As Ms. Hardison is a non-

5  acceptable medical source, the ALJ was required to give germane reasons to reject

6  the opinion. *See Ghanim*, 763 F.3d at 1161.

7  First, the ALJ found Ms. Hardison did not explain why Plaintiff was unable

8  to perform even sedentary work. Tr. 54-55. The Social Security regulations "give

9  more weight to opinions that are explained than to those that are not." *Holohan*,

10  246 F.3d at 1202. "[T]he ALJ need not accept the opinion of any physician,

11  including a treating physician, if that opinion is brief, conclusory and inadequately

12  supported by clinical findings." *Bray*, 554 at 1228.

13  While the ALJ found Ms. Hardison did not explain why Plaintiff is unable to

14  perform even sedentary work, Tr. 54-55, Ms. Hardison explained that working

15  would cause Plaintiff additional stress, which can increase pressure on the

16  aneurysm, which could cause it to burst, resulting in death. Tr. 1229. She further

17  explained Plaintiff would miss four or more days per month due to his dizziness,

18  fatigue, and blackouts. *Id.* Given the ALJ's failure to address the explanation

19  offered, this was not a germane reason to reject the opinion. Defendant argues the

20  ALJ properly considering Ms. Hardison's lack of explanation for her opinions

containing two different onset dates for Plaintiff's limitations, ECF No. 15 at 14, but the ALJ made no such consideration, Tr. 54-55. As such, the Court will not consider the post hoc rationalization. *See Bray,* 554 F.3d at 1225.

The ALJ offered additional reasons to reject Ms. Hardison's opinion, however, since the matter is being remanded for the reasons discussed *supra,* the ALJ is also directed to reconsider Ms. Hardison's opinions and incorporate the limitations into the RFC or give germane reasons to reject the opinions.

*3. Dr. Burkett and Dr. Palasi*

Dr. Burkett, a reviewing doctor, diagnosed Plaintiff with aneurysm of the ascending aorta and thoracic aorta, chronic syncopal episodes, hypertension, and chronic vertigo and migraines. Tr. 2173. He opined Plaintiff would not be able to maintain competitive employment; Plaintiff's symptoms could be considered at least equal in severity to listings 11.02 and 11.03; the amount of surgeries he has had may equal listing 4.09; he meets Listing 4.10; and he has a "very much" reduced RFC that is disabling due to lack of sustainable functioning, as evidenced by Ms. Hardison's opinion. Tr. 2173-75. Dr. Burkett also stated he agrees with Ms. Hardison's opinion. Tr. 2174. The ALJ gave Dr. Burkett's opinion little weight. Tr. 54. As Dr. Burkett is a non-examining source, the ALJ must consider the opinion and whether it is consistent with other independent evidence in the

1  record.  *See* 20 C.F.R. § 416.927(b),(c)(1); *Tonapetyan,* 242 F.3d at 1149; *Lester,*

2  81 F.3d at 830-31.

3        Dr. Palasi, a DSHS reviewing doctor, diagnosed Plaintiff with a liver mass

4  and heart aneurysm, and opined Plaintiff has no limitation in his ability to make

5  simple work-related decisions, be aware of hazards and take precautions, and ask

6  simple questions or request assistance; moderate environmental/non-exertional

7  restrictions; and marked postural and gross/fine motor skill restrictions and marked

8  limitations in his ability to perform activities, maintain regular attendance and be

9  punctual within customary tolerances. Tr. 909, 911.  She further opined Plaintiff

10  can lift a maximum of 10 pounds, can frequently lift and carry small items but

11  cannot frequently carry 10 pounds, and can sit for most of the day but cannot stand

12  most of the day, and he is therefore limited to sedentary work.  Tr. 910.  The ALJ

13  gave Dr. Palasi's opinion no weight.  Tr. 55.  As Dr. Palasi is a non-examining

14  source, the ALJ must consider the opinion and whether it is consistent with other

15  independence evidence in the record.  *See* 20 C.F.R. § 416.927(b),(c)(1);

16  *Tonapetyan,* 242 F.3d at 1149; *Lester,* 81 F.3d at 830-31.

17        As the case is remanded to reconsider the opinions of Dr. Harding and Ms.

18  Hardison, the ALJ is directed to reconsider the medical opinion evidence in its

19  entirety.  The ALJ is directed to reconsider the opinions of Dr. Burkett and Dr.

20

ORDER - 21

Palasi, and to incorporate the limitations into the RFC or provide specific and legitimate reasons, supported by substantial evidence, to reject the opinions.

**C. Step-Three Analysis**

Plaintiff contends that the ALJ erred by finding that Plaintiff's thoracic aortic aneurysm did not medically equal Listing 4.10. ECF No. 14 at 5-7. At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20 C.F.R. § 416.920(a)(4)(iii). The Listing of Impairments "describes for each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. § 416.925. To meet a listed impairment, a claimant must establish that he meets each characteristic of a listed impairment relevant to his claim. 20 C.F.R. § 416.925(d). If a claimant meets the listed criteria for disability, he will be found to be disabled. 20 C.F.R. § 416.920(a)(4)(iii). The claimant bears the burden of establishing he meets a listing. *Burch*, 400 F.3d at 683. The ALJ must receive into evidence during the administrative hearing the opinion of the testifying medical examiner on the issue of Listing equivalence and give appropriate weight to that opinion. SSR 96-6p (eff. July 2, 1996 to March 27, 2017).

Here, the ALJ found that Plaintiff's impairments and combinations of impairments did not meet or equal any listings, including Listing 4.10. Tr. 50. To

ORDER - 22

1  meet Listing 4.10, a claimant must have an aneurysm of the aorta or major

2  branches, due to any cause, demonstrated by appropriate medically acceptable

3  imaging, with dissection not controlled by prescribed treatment (as defined in

4  4.00(H)(6)). 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 4.10. The ALJ reasoned

5  Plaintiff does not meet or equal the listing because his medical records do not

6  demonstrate dissection that is not controlled by prescribed treatment, as 4.00(H)(6)

7  states an aneurysm is dissecting when the inner lining of the artery begins to

8  separate from the arterial wall, and it is not controlled when the claimant has either

9  persistent chest pain due to progression of the dissection, an increase in the size of

10  the aneurysm, or compression of one or more branches of the aorta supplying the

11  heart, kidneys, brain, or other organs. Tr. 50.

12       Plaintiff argues his condition medically equaled Listing 4.10 prior to his

13  surgical correction. ECF No. 14 at 6. He argues that although imaging did not

14  demonstrate dissection, it showed Plaintiff's aneurysm grew from 4.8 cm to 5.3

15  cm, and Plaintiff experienced frequent dizziness and syncopal episodes due to

16  hypertrophic cardiomyopathy. *Id.* Plaintiff contends the ALJ erred in making a

17  conclusory statement that Plaintiff does not meet or equal a listing, without

18  discussing the evidence. *Id.* at 6-7.

19       Morton Tavel, M.D., a board-certified specialist in cardiovascular disease

20  and internal medicine, testified as a medical expert at Plaintiff's hearing. Tr. 230-

ORDER - 23

44.  Dr. Tavel testified Plaintiff did not meet Listing 4.10 because he did not have a dissection of the aneurysm.  Tr. 235.  Dr. Tavel testified Plaintiff's conditions do not meet or equal a listing.  Tr. 237.  Plaintiff's counsel specifically asked if Plaintiff's conditions, considering his aortic aneurysm, coronary artery disease, and multiple repairs, equal a listing, to which Dr. Tavel testified Plaintiff's conditions did not equal a listing.  Tr. 238.  However, Dr. Burkett opined Plaintiff meets Listing 4.10, and his conditions may be equal to Listings 11.02, 11.03, and 4.09 Tr. 2173-75.  As the case is being remanded to reconsider Dr. Burkett's opinion, the ALJ is also directed to perform a new step-three analysis on remand.

**D. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims.  ECF No. 14 at 18-21.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).  "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has

1    alleged; [the claimant] need only show that it could reasonably have caused some

2    degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

3         Second, "[i]f the claimant meets the first test and there is no evidence of

4    malingering, the ALJ can only reject the claimant's testimony about the severity of

5    the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

6    rejection." *Ghanim*, 763 F.3d at 1163 (citations omitted).  General findings are

7    insufficient; rather, the ALJ must identify what symptom claims are being

8    discounted and what evidence undermines these claims.  *Id*. (quoting *Lester*, 81

9    F.3d at 834; *Thomas*, 278 F.3d at 958 (requiring the ALJ to sufficiently explain

10   why it discounted claimant's symptom claims)).  "The clear and convincing

11   [evidence] standard is the most demanding required in Social Security cases."

12   *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278

13   F.3d 920, 924 (9th Cir. 2002)).

14        Factors to be considered in evaluating the intensity, persistence, and limiting

15   effects of a claimant's symptoms include: 1) daily activities; 2) the location,

16   duration, frequency, and intensity of pain or other symptoms; 3) factors that

17   precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

18   side effects of any medication an individual takes or has taken to alleviate pain or

19   other symptoms; 5) treatment, other than medication, an individual receives or has

20   received for relief of pain or other symptoms; 6) any measures other than treatment

ORDER - 25

1  an individual uses or has used to relieve pain or other symptoms; and 7) any other

2  factors concerning an individual's functional limitations and restrictions due to

3  pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

4  416.929 (c).  The ALJ is instructed to "consider all of the evidence in an

5  individual's record," to "determine how symptoms limit ability to perform work-

6  related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

7        The ALJ found that Plaintiff's medically determinable impairments could

8  reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

9  statements concerning the intensity, persistence, and limiting effects of his

10  symptoms were not entirely consistent with the evidence.  Tr. 51.

11        The ALJ's evaluation of Plaintiff's symptom claims and the resulting

12  limitations relies significantly on the ALJ's assessment of the medical evidence.

13  Having determined a remand is necessary to readdress the medical source

14  opinions, any reevaluation must necessarily entail a reassessment of Plaintiff's

15  subjective symptom claims.  Thus, the Court need not reach this issue and on

16  remand the ALJ must also carefully reevaluate Plaintiff's symptom claims in the

17  context of the entire record.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir.

18  2012) ("Because we remand the case to the ALJ for the reasons stated, we decline

19  to reach [plaintiff's] alternative ground for remand.").

20

ORDER - 26

1      **E. Remedy**

2          Plaintiff urges this Court to remand for an immediate award of benefits.

3  ECF No. 14 at 17, 21; ECF No. 16 at 9-11.

4          "The decision whether to remand a case for additional evidence, or simply to

5  award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d

6  1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

7  When the Court reverses an ALJ's decision for error, the Court "ordinarily must

8  remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041,

9  1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the

10  proper course, except in rare circumstances, is to remand to the agency for

11  additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*,

12  775 F.3d 1090, 1099 (9th Cir. 2014).  However, in a number of Social Security

13  cases, the Ninth Circuit has "stated or implied that it would be an abuse of

14  discretion for a district court not to remand for an award of benefits" when three

15  conditions are met.  *Garrison*, 759 F.3d at 1020 (citations omitted).  Under the

16  credit-as-true rule, where (1) the record has been fully developed and further

17  administrative proceedings would serve no useful purpose; (2) the ALJ has failed

18  to provide legally sufficient reasons for rejecting evidence, whether claimant

19  testimony or medical opinion; and (3) if the improperly discredited evidence were

20  credited as true, the ALJ would be required to find the claimant disabled on

ORDER - 27

remand, the Court will remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Although Plaintiff urges remand for immediate benefits on the basis of crediting the medical opinion evidence and Plaintiff's testimony as true, the Court finds further proceedings are necessary for the ALJ to reconsider the medical evidence and Plaintiff's testimony and to resolve conflicts in the evidence. Further vocational testimony is also necessary at step four. The case is therefore remanded for further proceedings.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and is not free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social

ORDER - 28

Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED April 28, 2020.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 29